FILED

UNITED STATES DISTRCT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2017 JUN 22 AM 10: 56

ALEXI RIVERA and
YERIKA M. RIVERA,
Individually and on behalf of a class of persons similarly situated,
Plaintiffs,

Case No.: 3:17-cv-722-J-39 JBT

SERVIS ONE, INC.,
a foreign corporation,
doing business as BSI FINANCIAL SERVICES,
Defendant.
_____/

## CLASS ACTION COMPLAINT

COME NOW, Plaintiffs, Alexi Rivera and Yerika M. Rivera, (hereinafter referred to as Plaintiffs), by and through undersigned counsel, and sue Defendant, Servis One, Inc., doing business as BSI Financial Services, (hereinafter referred to as "BSI" or Defendant or its proper name), and allege:

### JURISDICTION AND VENUE

1. This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.* and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201 and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. § 1331(b), 15 U.S.C. § 1692k, 28 U.S.C. §§ 2201-2201 (d) and 28 U.S.C. § 1334(b).

2. Venue is proper pursuant to 28 U.S.C. § 1391 since Plaintiffs reside in this District and the conduct complained of occurred in this District.

1

## PARTIES

3. Plaintiffs are natural persons and residents of Duval County, Florida. At all times material hereto, Plaintiffs were "debtors" or "consumers" as defined by Fla. Stat. § 559.55(2) and 15 U.S.C. § 1692a (3). Plaintiffs have standing to bring a claim under the FDCPA, the FCCPA, the TCPA and the Declaratory Judgment Act because they were directly affected by violations of these Acts, and were subjected to Defendant's illegal and improper debt collection activities.

4. Defendant, BSI FINANCIAL SERVICES ("BSI"), is a mortgage loan servicer based in Titusville, Pennsylvania. BSI is an operating division of SERVIS ONE, LLC, with its principal office located in Irving, Texas. Defendant markets to lenders that it is uniquely equipped to manage the heightened requirements of servicing loans that are in default and in bankruptcy. Defendant regularly conducts business in Jacksonville, Duval County, Florida.

## GENERAL ALLEGATIONS

5. This is an action seeking class wide relief for violation of the FDCPA and FCCPA for statutory damages under 15 U.S.C.A. § 1692k (a) (2) (B) and attorney's fees and the costs of this action under 15 U.S.C.A. § 1692k (a) (3) and Fla. Stat. § 559.77(2).

6. On or about October 29, 2007, Plaintiffs, Alexi Rivera and his wife, Yerika M. Rivera, entered into a loan and mortgage with Bank of America, for their family home located at 12994 High Tide Blvd., Jacksonville, Florida 32258 ("High Tide Property").

7. At all times pertinent to this case, the mortgage loan was serviced by Defendant BSI, who corresponded monthly with Plaintiffs by U.S. Mail by means of periodic monthly billing statements in the form of *Exhibit A*.

8. On May 27, 2014, Mr. and Mrs. Rivera filed a voluntary petition for protection from creditors under Chapter 13 of the United States Bankruptcy Code.

9. In January 2016, Plaintiffs moved out and voluntarily surrendered the home located at 12994 High Tide Blvd., Jacksonville, Florida 32258.

10. On or about April 5, 2016, Plaintiffs' Bankruptcy petition was converted to a Chapter 7. The mortgage debt serviced by BSI on the High Tide Property was not reaffirmed.

11. On June 14, 2016, Defendant BSI, as the mortgage loan servicer on the High Tide Property, filed a Motion for Relief from the Automatic Stay, seeking leave to foreclose the mortgage on the High Tide Property. In due course, the Bankruptcy Court entered its Order granting relief from the automatic stay to allow BSI to take actions to foreclose the property.

12. On August 31, 2016, the U.S. Bankruptcy Court entered its order discharging Plaintiffs. The Certificate of Notice indicates that the Notice of the Discharge was provided by US Mail to BSI Financial Services. In addition, the Notice of the Discharge was sent by the court's CM/ECF electronic mail on August 31, 2016 to Maurice C. Hinton as agent for BSI.

13. The August 31, 2016 Discharge Order provided notice to BSI that the note and underlying debt secured by the subject mortgage was not collectable from Plaintiffs, as they were fully released from any and all personal monetary liabilities on the subject home loan mortgage serviced by BSI. BSI was also aware that the High Tide Property had been voluntarily surrendered by Plaintiffs and was vacant at the time of the Discharge Order.

14. Notwithstanding the August 31, 2016 Discharge Order, BSI continued dunning Plaintiffs in an effort to collect the mortgage debt that had been discharged.

15. On September 19, 2016, Defendant BSI Financial Services, communicated with Plaintiffs at their new Jacksonville address through a Mortgage Statement regarding their

discharged mortgage debt on the High Tide Property. The Mortgage Statement was the same statement used by BSI prior to default.

16.     The Mortgage Statement provided for a monthly "Amount Due" along with an explanation that that such amount included principle and interest, as well as funds to be paid into escrow. (A copy of the September 19, 2016 Mortgage Statement is attached as **Exhibit "A"**). The Mortgage Statement also included, among other things, a specific "Payment Due Date"; "Current Monthly Payment" amount of $834.32"; "Total Amount Due"; and "Total Amount Enclosed" and a "Late Fee" of $27.65. *(See Exhibit A)*.

17.     The Mortgage Statement indicates that "You must pay this amount to bring your loan current" and "if you are experiencing financial difficulty, see back for information about mortgage counseling or assistance." Under payment options, BSI offered several payment options, including payment by mail, online, pay by phone, monthly, bi-weekly and weekly ACH, western union, and overnight delivery. The payment coupon was to be detached and returned to BSI by U.S. Mail along with payment.

18.     Under the "Past Payments Breakdown" and "Delinquency Notice", BSI included the following:

> For Informational Purposes Only. If you have filed a bankruptcy petition and there is an "Automatic stay" in effect or you have received a discharge of your personal liability for this loan, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally, but strictly for information purposes only.

19.     Nowhere within the Mortgage Statement is there an offer to accept payment in lieu of foreclosure. To the contrary, the Delinquency Notice was issued while BSI was foreclosing on the property.

20. In response to the Mortgage Statement *(Exhibit "A")*, on October 17, 2016, Plaintiffs' counsel, Michael Cleaveland, sent a letter to the Defendant demanding that it cease all collection attempts and revoked consent to contact the Plaintiffs. [See, attached *Exhibit "B"*]

21. Similar mortgage statements were sent to Plaintiffs on October 18, 2016, November 18, 2016, and December 19, 2016. [See, attached *Exhibits "C"; "D"; and "E"*.].

22. On November 24, 2016, Defendant BSI Financial Services mailed a separate debt collection communication to Plaintiffs at their new Jacksonville address. The letter referenced their real property located at 12994 Tide Blvd, Jacksonville, Florida 32258 and Loan #0871815806, and stated that BSI Financial Services wanted to discuss the status of their account and provides: "This is an attempt to collect a debt. Any information obtained will be used for that purpose."

23. In a font smaller than the other paragraphs of the debt collection communication, on the bottom of the front page, BSI stated:

> If you have filed a bankruptcy petition and there is an "Automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of this loan from you personally. If either of these circumstances apply, this communication is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filings, whatever rights we hold in the property that secures the obligation remain unimpaired.

A copy of the November 24, 2016 debt collection communication is attached as *Exhibit "F"*.

24. On April 14, 2017, Defendant BSI Financial Services mailed a separate debt collection communication to Plaintiffs regarding hazard insurance. BSI stated "…we will buy insurance at your expense, which will be billed to your escrow account or added to your loan." The last line of the letter provides: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." BSI failed to provide any sort of bankruptcy disclaimer to this

communication. A copy of the April 14, 2017, debt collection communication is attached as ***Exhibit "G"***.

25. In addition to the written debt demands, BSI began a relentless campaign of autodialed telephone calls to Plaintiffs to collect a debt. The debt collectors' telephone number was identified by caller ID as (866) 647-0881. The debt collectors continuously called Mr. Rivera on his cell phone (904) 416-8652 as recently as June 6, 2017. In addition, BSI continued to call Mrs. Rivera's place of employment despite being told repeatedly she could not take personal calls at work. Mr. Rivera and Ms. Rivera repeatedly instructed the collectors to stop calling them.

## CLASS ALLEGATIONS

26. Plaintiffs, Alexi Rivera and Yerika M. Rivera, assert this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class defined as:

All persons within the state of Florida who: (a) had or have a residential mortgage loan serviced by BSI; (b) received a Chapter 7 discharge of the mortgage debt serviced by BSI; (c) were sent a debt collection communication in substantially the same form as the Defendant's Mortgage Statements found in Exhibits "A" referencing the mortgage debt discharged in Bankruptcy. A subclass of individuals within the applicable statutes of limitations for each claim is also appropriate.

27. Plaintiff, Alexi Rivera, brings the TCPA claims pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a class defined as:

All persons in the United States (a) to whose cellular telephone number (b) Defendant placed a non-emergency telephone call (c) using an automatic telephone dialing system or an artificial or prerecorded voice (d) within 4 years of the complaint (e) where Defendant did not have express consent to call said cellular telephone number OR where consent had been revoked for any such calls.

28. The FDCPA and FCCPA class is so numerous that joinder of all members is impractical. Defendant routinely uses a form document in the form of ***Exhibit A*** when collecting debts. Defendant uses the same form letter in connection with its collection efforts in hundreds of accounts within the state of Florida that fall within the above Class definition. Given

6

the percentage of consumers who filed for Bankruptcy during the appropriate time frame, it is reasonable to presume that there are hundreds of class members.

29. Plaintiff does not know the exact number of members in the TCPA Class, but based upon the size and national scope of Defendant's business, Plaintiff reasonably believes that the class members' number at a minimum is in the thousands based on the use of software to make the debt collection calls.

30. There are questions of law and fact common to the FDCPA and FCCPA class, and which predominate over any questions affecting only individual members. The principal issues raised by this claim are whether Defendant's letter violates the FDCPA, the FCCPA as an unfair or deceptive means to collect debt and the common language of the debtor's bankruptcy discharge injunction.

31. Plaintiffs' claims are typical of those of the class members. All are entitled to relief by virtue of Defendant's violations of the FDCPA and FCCPA in connection with mortgage statements sent on discharged mortgage debts.

32. There are questions of law and fact common to the members of the TCPA Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

    a. Whether Defendant engaged in a pattern of using an ATDS to place calls to cellular telephones;

    b. Whether Defendant's dialer delivers pre-recorded messages to cellular telephones;

    c. Whether Defendant's conduct was knowing or willful;

    d. Whether Defendant's actions violated the TCPA;

33. As a person who received the telephone calls using an ATDS or an artificial or prerecorded voice, without their prior express consent, or whereby consent had been revoked, all within the meaning of the TCPA, Plaintiffs assert claims that are typical of the members of the TCPA Class. Plaintiff will fairly and adequately represent and protect the interests of the Class, and Plaintiffs do not have an interest that is antagonistic to any member of the Class.

34. The Plaintiffs will fairly and adequately protect the interests of the class. They have retained counsel experienced in class actions as well as the handling FDCPA, FCCPA and TCPA actions. Neither Plaintiffs nor their counsel have any interests antagonistic to the Class or which might cause them not to vigorously pursue this action.

35. Certification of a class under Rule 23(b) (3) is appropriate, in that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The interests of the class members in individually controlling the prosecution and defense of separate actions is minimal, in that the class members are unlikely to be aware their rights were violated and in that individual actions are uneconomical. Difficulties likely to be encountered in managing this class action are substantially less than those that are involved in other types of cases routinely certified as class actions.

### COUNT I: FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

36. The above paragraphs 1 through 25 are incorporated herein.

37. In the case at bar, this Defendant attempted to collect on a debt that was not owed and had been discharged pursuant to 11 U.S.C.A. § 727 of the Bankruptcy Code. As Judge Posner has stated: "Dunning people for their discharged debts would undermine the 'fresh start' rationale of bankruptcy and is prohibited by the [FDCPA] which … prohibits a debt collector from making a 'false representation of the character, amount, or legal status of any debt.'"

38. The Defendant had no legal right to collect any amount from the Plaintiffs and the class after receiving the Notice of Discharge.

39. At all material times herein, Plaintiffs' debt and the debt of others similarly situated were consumer debts as defined by the FDCPA, 15 U.S.C.A. § 1692a(5).

40. At all material times herein, Plaintiffs and others similarly situated were "consumers" as defined by the FDCPA, 15 U.S.C.A. § 1692a(3).

41. At all material times herein, Defendant was a "debt collector" as defined by the 15 U.S.C.A. § 1692a (6).

42. At all material times herein, Defendant knew or should have known that the debt they were attempting to or did collect from the Plaintiffs and the Class Members had been discharged, and was therefore not owed.

43. The correspondence sent by BSI to Plaintiffs and the class is a "communication" as that term is defined by 15 U.S.C. § 1692a (2).

44. By billing Plaintiffs and the Class, Defendant attempted to collect debts which had been discharged and were therefore not owed. Defendant's communications asserting that Plaintiffs owed a debt based on the mortgage loan, including but not limited to, monthly mortgage statements, violates 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

45. In addition, Defendant's above mentioned collection activities falsely represented/represent the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e (2) (A).

46. As a direct and proximate result of Defendant's FDCPA violations, Plaintiffs and others similarly situated have been harmed. Plaintiffs, and others similarly situated, are entitled

to statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

47. For the purpose of the claims brought in this action, the applicable standard under the FDCPA is "the least sophisticated" consumer standard. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985). The manner in which Defendant chose to present the inconsistent information on the front and back of the letter is misleading to "the least sophisticated" consumer in that the statements are used both to collect a debt and for informational purposes.

48. This is an action seeking class wide relief for Defendant's pattern and practice of pursuing the collection of discharged debts from the Plaintiff and the Class Members.

## COUNT II – VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT ("FCCPA")

49. The above paragraphs 1 through 25 are incorporated fully herein.

50. This is a claim for violation of the Florida Consumer Collection Practices Act F.S. 559.55 et seq.

51. At all times material to this complaint, Defendant was a "debt collector" as defined under Fla. Stat. § 559.55(6).

52. At all times material, Plaintiffs and others similarly situated were "debtors" as defined by Fla. Stat. § 559.55(2).

53. At all times material, the debts of Plaintiffs and the Class were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(1).

54. The FCCPA, section 559.72(9) provides:

In collecting consumer debts, no person shall:

(9) <u>Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate</u>, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. § 559.72(9) (emphasis added).

55. The billing letters sent to Plaintiffs and others similarly situated by Defendant attempt to collect a debt.

56. However, Defendant had no legal right to seek collection of any amounts from Plaintiffs and others similarly situated, and was in fact enjoined from doing so pursuant to the bankruptcy discharges of the subject amounts.

57. By attempting to collect debts previously discharged in bankruptcy, Defendant knowingly violated Fla. Stat. § 559.72(9) by claiming and attempting to enforce a debt which was not legitimate and not due and owing.

58. As a direct and proximate result of Defendant's FCCPA violations, Plaintiffs and others similarly situated have been harmed. Plaintiffs and the Class are entitled to actual damages, statutory damages and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

## COUNT III – THE DECLARATORY JUDGMENT ACT 28 U.S.C. §§ 2201-2201

59. The above paragraphs 1 through 25 are incorporated herein.

60. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201, offers a unique mechanism by which a party may seek to remedy ongoing violations of statutory provisions and to prevent ongoing harm in the form of declaratory and injunctive relief.

61. Specifically, the Declaratory Judgment Act reads:

In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any

such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. §§ 2201-2201.

62. Plaintiffs took out a mortgage loan from Bank of America, for personal, family, or household services, specifically a mortgage loan on their home located at 12994 High Tide Blvd., Jacksonville, Florida 32258.

63. In 2014, Plaintiffs filed for protection under the United States Bankruptcy Code in Bankruptcy.

64. On August 31, 2016, the U.S. Bankruptcy Court entered its Discharge of Debtors and the note and underlying debt secured by the subject mortgage became uncollectable. BSI was notified via mail of the status of the debt by the Jacksonville Division Middle District Clerk of Court. Pursuant to the Chapter 7 bankruptcy discharge order, Plaintiffs were fully released from any and all personal monetary liabilities on the subject loan.

65. Too frequently, lenders and mortgage servicers abuse the debtors' vulnerability after the discharge and ignore the bankruptcy code requirements and the discharge injunction by continuing to communicate with the debtor.

66. Many of the communications asserted that Mr. and Mrs. Rivera owed a debt based on the mortgage loan, were sent directly to Plaintiffs at the family home and not to their attorney of record. The communications cannot be construed as mere attempts to enforce the mortgage holder's *in rem* rights to foreclose.

67. The Defendant has no legal right to collect any amount from the Plaintiffs.

68. There is an actual controversy within the jurisdiction of this Court regarding whether Defendant's conduct in sending written communications which seek to collect money on a debt which was discharged in Bankruptcy violates the discharge order in the debtor's bankruptcy case, the FDCPA, and the FCCPA. The parties are in need of a declaration of their rights and responsibilities under Federal and Florida state law.

69. Plaintiffs believe that Defendant has sought payment for debts previously discharged in bankruptcy in circumvention of existing federal court orders of bankruptcy courts, the FDCPA, and the FCCPA.

70. Defendant's conduct as described herein should be declared to be unlawful and improper.

71. Defendant should be enjoined from sending billing letters requesting payments for debts previously discharged in bankruptcy.

72. Defendant should be forced to disgorge all ill-gotten gains collected from consumers as a result of its unlawful conduct.

## COUNT IV- VIOLATION OF THE TCPA

73. The above paragraphs 1 through 25 are incorporated herein.

74. This is a claim by Mr. Rivera for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") by Defendant.

75. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because

telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. *See Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

76. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

77. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

78. In 2003, the FCC held that predictive dialers like the one used by defendant constitute an ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115, ¶ 131 (July 3, 2003).

79. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

80. Verbal instructions to cease collection calls apply to the TCPA and thus effectively revoke any prior consent the caller may have had. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

81. The debt demand communication was followed by telephone calls from debt collectors employed by Defendant to Mr. Rivera's cell phone, in an effort to collect a debt. Mr. Rivera repeatedly instructed the collectors to stop calling. In addition to his repeated oral revocation, the consent to telephone Mr. Rivera using an auto dialer regarding the debt had been revoked via his bankruptcy discharge and through written revocation from his attorney Michael Cleaveland *(Exhibit "B")*.

82. The telephone call from Defendant to Plaintiff's cellular telephone number was made using an ATDS.

83. The subject calls were placed using a predictive dialer.

84. Defendant, or its agents, placed calls to Plaintiff at a telephone number assigned to a cellular telephone service.

85. The telephone calls Defendant placed to Plaintiff were not placed for emergency purposes, as defined by TCPA § 227 (b)(1)(A)(i).

86. Defendant made unsolicited telephone calls to the wireless telephone number of each plaintiff and the other members of the class using a pre-recorded voice and/or using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

87. At the time Defendant placed the phone calls alleged herein, Defendant did not have consent to do so.

88. Defendant has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... ".

89. As a result of Defendant's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

90. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Defendant's violations of the TCPA in the future.

91. Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls; such calls are also an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter an Order:

A. Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representative, and appointing the undersigned Counsel as Class Counsel;

B. Adjudging that Defendant violated the FDCPA sections enumerated above, and awarding Plaintiffs and Class members actual damages in the form of money paid to Defendant on the discharged debt and statutory damages pursuant to 15 U.S.C. § 1692k;

C. Adjudging that Defendant violated the FCCPA, Fla. Stat. § 559.72(9), and awarding Plaintiffs and Class members actual and statutory damages pursuant to Florida Statutes § 559.77(2);

D. Declaring that Defendant's attempt to collect debts previously discharged in bankruptcy is unlawful;

E. Enjoining Defendant from sending billing letters similar to **"Exhibits "A", "C", "D", "E" and "G."**;

F. Ordering disgorgement of all ill-gotten sums collected in violation of the law;

G. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

H. An injunction prohibiting Defendant from using an artificial or prerecorded voice message to call numbers assigned to cellular telephones without the prior express consent of the called party;

I. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

J. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

K. Awarding Plaintiffs, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3), and Florida Statutes § 559.77(2);

L. Awarding Plaintiffs, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

M. Awarding such other and further relief as the Court may deem just and proper.

Dated: June 22, 2017.

                                                **MAX STORY, P.A.**

                                                /s/ Max Story
                                                Max Story, Florida Bar No: 527238

328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
Facsimile: (904) 758-5333
*max@maxstorylaw.com*


JANET R. VARNELL, FBN: 0071072
BRIAN W. WARWICK, FBN: 0605573
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*
Attorneys for Plaintiffs